NO CV-30    Case 8:21-cv-00584-DOC-KES   Document 1   Filed 03/22/21   Page 1 of 17   Page ID #:1

FEE PAID

FILED
CLERK U.S. DISTRICT COURT
MAR 22 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: RS DEPUTY

Robert J. Nelson (CA 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| [UNDER SEAL], | Case No. **8:21-CV-00584-DOC-KESx** |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| [UNDER SEAL], | |
| Defendant. | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. 3730** |

1  Robert J. Nelson (CA 132797)
   rnelson@lchb.com
2  Nimish R. Desai (State Bar No. 244953)
   ndesai@lchb.com
3  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
4  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
5  Telephone:  415.956.1000
   Facsimile:  415.956.1008
6
   Attorneys for Plaintiffs
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | UNITED STATES and           | Case No. _____
   | CALIFORNIA ex rel. ADRIAN   |
12 | ERIC RAMOS, M.D.            |
   |                             |
13 |          Plaintiffs,        | **COMPLAINT**
   |                             |
14 | v.                          | **DEMAND FOR JURY TRIAL**
   |                             |
15 | MEMORIAL HEALTH SERVICES    |
   | d/b/a MEMORIALCARE,         | **FILED IN CAMERA AND UNDER**
16 |                             | **SEAL PURSUANT TO 31 U.S.C. 3730**
   |          Defendant.         |
17

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1
II. JURISDICTION ............................................................................................. 1
III. PARTIES ........................................................................................................ 1
IV. BACKGROUND AND REGULATORY FRAMEWORK ........................... 2
V. FACTUAL ALLEGATIONS ......................................................................... 6
VI. CAUSES OF ACTION .................................................................................. 8
VII. PRAYER FOR RELIEF ............................................................................... 11
VIII. JURY DEMAND ......................................................................................... 12

## I.  INTRODUCTION

1. This case involves false and fraudulent claims for payment by Defendant Memorial Health Services d/b/a MemorialCare ("Defendant or MemorialCare") to the Medicare and Medi-Cal programs. MemorialCare hospitals incorrectly categorize patients as inpatient admissions, versus outpatient, thereby improperly increasing their reimbursement from both Medicare and Medi-Cal.

## II.  JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3732, and 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District; has systematically, continuously, and purposefully availed itself of the privilege of doing business in California and in this District; and its acts giving rise to the violations alleged occurred in California and in this District. This Court also has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant . . . resides, transacts business or in which any act proscribed by section 3729 occurred." During the relevant period, Defendant resided and transacted business in this District.

4. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because the Defendant can be found in, resides in, and transacts business in this District, because a substantial part of the events or omissions which give rise to the claims alleged herein occurred in this District, and because the Defendant is subject to this Court's personal jurisdiction with respect to this action.

## III.  PARTIES

5. Relator Adrian Eric Ramos, M.D. is a family physician and served as Chief Medical Officer of MemorialCare's largest hospital, Long Beach Medical Center. Relator has personal knowledge of the facts alleged in this Complaint, and is not aware of any "public disclosure" in connection with the false claims alleged

in this Complaint, as defined in 31 U.S.C. § 3730(e)(4)(A).

6. Relator qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B) because: (1) prior to any purported public disclosure, he voluntarily disclosed to the Government the information on which allegations or transactions in this claim are based, and/or (2) he has knowledge which is both direct and independent of any public disclosures to the extent any may exist, and Relator voluntarily provided the information to the Government before filing this action. Relator's knowledge was acquired through information learned while employed by MemorialCare, his access to internal documentation of the facts described herein, and related private conversations with Defendant's employees.

7. Defendant Memorial Health Services is based in Fountain Valley, California. It is a non-profit health care organization, which, under the name MemorialCare Health System, operates Long Beach Memorial Medical Center ("LBM"), Miller Children's and Women's Hospital ("MCW"), and Orange Coast Memorial Medical Center ("OCM").

## IV. BACKGROUND AND REGULATORY FRAMEWORK

8. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, commonly referred to as Medicare.

9. Medicare provides basic health insurance for individuals who are 65 years of age or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c.

10. Medicare is comprised of four parts: A, B, C, and D.

11. Medicare Part A provides federal government funds to help pay for, among other things, the costs of hospital, related post-hospital, home health services, and hospice care provided to Medicare beneficiaries. *See generally* 42 U.S.C. §§ 1395c, *et seq*.

12. Medicare Part A is administered through contracts with Medicare administrative contractors. 42 U.S.C. § 1395h.

13. California Medicaid, or Medi-Cal, was established pursuant to Title XIX of the Social Security Act. 42 U.S.C. §§ 1396-1, *et seq.*

14. Medicaid provides health coverage for people with low income and various disabilities and is jointly administered by the U.S. Centers for Medicare and Medicaid Services (CMS) and the State of California.

15. The Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS"), administers the Medicare and Medicaid programs and issues regulations and guidance governing reimbursement.

16. "[N]o payment [by Medicare] may be made ... for any expenses incurred for items or services ... [that] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]" 42 U.S.C. § 1395y(a)(1)(A).

17. CMS defines a "reasonable and necessary" service as one that "meets, but does not exceed, the patient's medical need," and is furnished "in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition ... in a setting appropriate to the patient's medical needs and condition[.]" CMS, Medicare Program Integrity Manual § 13.5.4 (2019).

18. "Because medical necessity is a condition of payment, every Medicare claim includes an express or implied certification that treatment was medically necessary." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020). Therefore, "claims for unnecessary treatment are false claims." *Id*.

19. The medical necessity requirement applies to claims for inpatient hospitalization. Medicare reimburses medical providers for inpatient hospitalization only if "a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose[.]" 42 U.S.C. § 1395f(a)(3).

20. Inpatient admission "is generally appropriate for payment under Medicare Part A when the admitting physician expects the patient to require hospital care that crosses two midnights." 42 C.F.R. § 412.3(d)(1).

21. Doctors do not have unfettered discretion to decide whether inpatient admission is medically necessary: "The factors that lead to a particular clinical expectation must be documented in the medical record in order to be granted consideration." 42 C.F.R. § 412.3(d)(1)(i).

22. The regulations consider the medical necessity of inpatient admission a question of fact: "No presumptive weight shall be assigned to the physician's order under § 412.3 or the physician's certification ... in determining the medical necessity of inpatient hospital services .... A physician's order or certification will be evaluated in the context of the evidence in the medical record." *Id.* § 412.46(b).

23. Where a patient's need for inpatient treatment is not yet established, but possible, providers are expected to use observation care. Observation care is a well-defined set of specific, clinically appropriate services, which include ongoing short term treatment, assessment, and reassessment before a decision can be made regarding whether patients will require further treatment as hospital inpatients or if they are able to be discharged from the hospital. Observation status is commonly assigned to patients who present to the emergency department and who then require a significant period of treatment or monitoring before a decision is made concerning their admission or discharge.

24. When a physician orders that a patient be placed under observation, the patient's status is that of an outpatient. The purpose of observation is to determine the need for further treatment or for inpatient admission. Thus, a patient in observation may improve and be released, or be admitted as an inpatient. *See* Pub. 100-02, Medicare Benefit Policy Manual, Chapter 1, §10 "Covered Inpatient Hospital Services Covered Under Part A."

25. Providers are also required to follow procedures for concurrent and

post-discharge review of admission status, and to indicate changes to admission status with certain condition codes. For example, condition code 44 should be used for a change in admission status from inpatient to outpatient status that happens concurrently, i.e., prior to discharge or release, and prior to the submission of a claim to the Government. Noridian Healthcare Solutions, *Inpatient to Outpatient Status Change*, available at https://med.noridianmedicare.com/web/jea/topics/observation/inpatient-to-outpatient-status (last visited March 1, 2021).

26. Likewise, if the determination that the patient should not have been admitted as inpatient is not made until after the patient has been discharged, or other criteria for use of condition code 44 are not met, or if the admission is denied due to lack of medical necessity, the hospital may seek payment for select inpatient Part B benefits by billing the patient under condition code 121. This code is used alongside a "no-pay Part A claim" using type-of-bill code 110. Together, they signify that no inpatient claim will be paid, and that certain elements of the patient's stay will be compensated under Medicare Part B, which typically reimburses for outpatient services. *Id*.

27. Medi-Cal inpatient claims are subject to essentially the same rules and guidelines as those outlined above for Medicare – specifically, that inpatient admission be reasonable, medically necessary, and supported by the medical record.

28. Like many hospitals, MemorialCare's facilities use the InterQual Level of Care Criteria 2019 ("InterQual") as a benchmark for determining the medical appropriateness of hospital admission, continued stay, and discharge. Interqual is an industry-standard set of criteria developed (and updated annually) by McKesson Health Solutions LLC, and is reviewed and validated by a national panel of clinicians and medical experts, including those in the community and academic practice settings, as well as within the managed care industry throughout the United States. InterQual criteria are a synthesis of evidence-based standards of care,

1  current practices, and consensus from licensed specialists and/or primary care
2  physicians.

3       29.    Inpatient care is far more expensive to government programs and far
4  more lucrative for hospitals. As one prominent industry publication noted, inpatient
5  stays have reimbursement rates that are two to three times higher than outpatient
6  cases, resulting in thousands of dollars more per case. *100 Things to Know about*
7  *Medicare Reimbursement,* Becker's Hospital Review (Sept. 17, 2015), available at
8  https://www.beckershospitalreview.com/finance/100-things-to-know-about-
9  medicare-reimbursement.html (last visited March 1, 2021).

10       30.    The Medicare Payment Advisory Commission made similar
11  observations in a June 2015 report: "Medicare generally pays more for short
12  inpatient stays than similar outpatient observation stays, and those inpatient stays
13  are highly profitable." MedPac, Factsheet on June 2015 Report to Congress,
14  available at  http://www.medpac.gov/docs/default-source/fact-sheets/fact-sheet-on-
15  medpac-s-june-2015-report-to-the-congress-medicare-and-the-health-care-delivery-
16  system.pdf?sfvrsn=0 (last visited March 1, 2021).

17  **V.**    **FACTUAL ALLEGATIONS**

18       31.    Relator served as Chief Medical Officer at MemorialCare's largest
19  campus, Long Beach Medical Center ("LBM"), from January 2019 to August 2020.
20  In that role, he oversaw medical staff and the graduate medical education program,
21  and also served on LBM's utilization review ("UR") committee, where he focused
22  in particular on length of stay and readmission rates.

23       32.    MemorialCare sets and manages the policies, procedures, and practices
24  regarding billing at its hospitals – including those related to admission status – at its
25  corporate offices in Fountain Valley.

26       33.    At LBM, and on information and belief at all other MemorialCare
27  campuses, MemorialCare tasks hospitalist and intensivist staff with deciding
28  whether to admit a patient as inpatient, outpatient, or observation. After that initial

decision, case management staff are tasked with ensuring that a given admission order was appropriate under the relevant rules and regulations; when necessary, case management staff are to confer with the admitting physician about changes to admission status through condition codes 44 and 121.

34. Numerous metrics are informative of whether a hospital is appropriately billing claims as inpatient or outpatient. One important metric is the prevalence of "short stays" or "1 day stays" – inpatient admissions lasting one day or less, whereas inpatient admissions are intended for patients that need care that will cross "two midnights," as set out above.

35. Since at least 2016, and through at least June of 2020, close to 25% of LBM's inpatient discharges have been short stays. Nationally, this puts LBM in the top tenth of all hospitals for this metric, or two full standard deviations above the median. At another hospital where Relator currently works – also located in Southern California and with a similar patient and payer mix – the percentage of inpatient admissions lasting less than one day is 3.5%.

36. Likewise, from 2016-2020, only approximately 8% of LBM's hospital stays had any observation time, putting it in the bottom tenth of all hospitals nationally for this metric. At MCW, another of MemorialCare's facilities, there were virtually no discharges with observation time over the same time period. Combined with the extraordinarily high percentage of inpatient short stays, this indicates MemorialCare facilities are quickly defaulting to inpatient status for its patients, rather than using outpatient or observation status.

37. In addition, LBM and MCW used condition codes 44 and 121 relatively infrequently, suggesting an inadequate effort to rectify admission status errors after the fact. For example, whereas LBM typically averages approximately 20,000 inpatient discharges every year, about 5,000 of which are one-day stays, it uses condition code 44 only about 50 times per year, and code 121 about 450 times per year. MCW uses these codes even less frequently.

38. MemorialCare's improper short stays disproportionately impacted government payers, as MemorialCare's private payers far were more likely to question and ultimately deny its inpatient short stays.

39. Tellingly, in July 2020, senior resource and utilization management employees evaluated trends in one-day stays and observations status at two of MemorialCare's facilities hospitals, LBM and MCW. In addition to noting the trends outlined above, MemorialCare estimated the financial impact of post-discharge class change – meaning, a change from inpatient to outpatient status. It estimated such a change for 1,015 claims, 997 of which were to Medicare. The differential in reimbursement for these claims, if treated as outpatient instead of inpatient, was tens of millions of dollars from Medicare.

40. The same evaluation concluded that there was need for systemwide education around appropriate admission status, the two midnight rule, and use of condition code 44, suggesting a systemwide failure at MemorialCare in each of these areas.

41. One of the authors of the July 2020 analysis confided in Relator that MemorialCare's policies and practices around admission status were deeply concerning and that her review had identified numerous false claims for payment to the government programs that should not have been billed as inpatient. Among other comments, she told Relator that MemorialCare's practices were so deficient that it raised the risk of "jail time," or words to that effect.

## VI. CAUSES OF ACTION

### COUNT I
### False Claims Act, 31 U.S.C. § 3729, *et seq.*
### (Against Defendant MemorialCare)

42. Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

43. This is a civil action brought by Relator, on behalf of the United States

of America, against Defendant under the False Claims Act, 31 U.S.C. §3730(b)(1).

44. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented or caused to be presented, and may still be presenting or causing to be presented false or fraudulent claims for payment or approval under the Medicare and Medicaid programs to officers, employees, or agents of the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(A).

45. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false or fraudulent records and/or statements to get false or fraudulent claims paid under the Medicare and Medicaid programs in violation of 31 U.S.C. § 3729(a)(1)(B).

46. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the United States Government under the Medicare and Medicaid programs, in violation of 31 U.S.C. § 3729(a)(1)(G).

47. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money or property to the United States Government under the Medicare and Medicaid programs, in violation of 31 U.S.C. § 3729(a)(1)(G).

48. The United States, unaware of the falsity of the claims and/or statements made or caused to be made by Defendant, and in reliance on the

1  accuracy of these claims and/or statements, paid, and may continue to pay, for
2  medical care and related management services for recipients of Medicare and
3  Medicaid health insurance programs, and has not received back any funds owed to
4  it by Defendant.

5  49. As a result of Defendant's actions as set forth above, the United States
6  has been, and continues to be, damaged.

## COUNT II
## California False Claims Act, Cal. Gov't Code § 12650, et seq.
## (Against Defendant MemorialCare)

10  50. Relator incorporates by reference the preceding paragraphs of the
11  Complaint as though fully set forth herein.

12  51. This is a civil action brought by Relator on behalf of the State of
13  California against Defendant under the California False Claims Act, Cal. Gov.
14  Code § 12652(c).

15  52. Defendant, in reckless disregard or deliberate ignorance of the truth or
16  falsity of the information involved, or with actual knowledge of the falsity of the
17  information, presented, or caused to be presented to, and may still be presenting or
18  causing to be presented to, an officer or employee of the State of California or its
19  political subdivisions, false or fraudulent claims for payment, in violation of Cal.
20  Gov. Code § 12651(a)(1).

21  53. Defendant, in reckless disregard or deliberate ignorance of the truth or
22  falsity of the information involved, or with actual knowledge of the falsity of the
23  information, made, used or caused to be made or used, and may still be making,
24  using or causing to be made or used, false records or statements to get false or
25  fraudulent claims paid or approved in violation of Cal. Gov. Code § 12651(a)(2).

26  54. Defendant, in reckless disregard or deliberate ignorance of the truth or
27  falsity of the information involved, or with actual knowledge of the falsity of the
28  information, made, used or caused to be made or used, and may still be making,

using or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the State of California or its political subdivisions in violation of Cal. Gov. Code § 12651(a)(7).

55. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money or property to the State of California or its political subdivisions in violation of Cal. Gov. Code § 12651(a)(7).

56. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, conspired to commit the violations of subsections (1), (2), and (7) as described above, in violation of Cal. Gov. Code § 12651(a)(3).

57. The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made or caused to be made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for medical care and related management services for recipients of Medicaid health insurance programs, and has not received back any funds owed to it by Defendant.

58. As a result of Defendant's actions as set forth above, the State of California, including its political subdivisions, has been, and continues to be, damaged.

## VII. PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant as follows:

A. That Defendant be ordered to cease and desist from submitting any more false claims, or further violating the federal and California False Claims Acts;

B. That judgment be entered in the United States of America's favor and against Defendant in the amount of each and every false or fraudulent claim or

retention of funds, multiplied as provided for in 31 U.S.C. § 3729(a)(1), plus a civil penalty of not less $5,500 or more than $11,000 per claim or violation as provided by 31 U.S.C. § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

      C.     That judgment be entered in California's favor and against Defendant in the amount of each and every false or fraudulent claim or retention of funds, multiplied as provided for by the California False Claims Act, plus civil penalties in the ranges provided by the Act.

      D.     That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and Cal. Gov't Code § 12652(g).

      E.     That Defendant be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

      F.     That judgment be granted for Relator against Defendant for all costs, including, but not limited to, court costs, litigation costs, expert fees, and all attorneys' fees incurred by Relator in the prosecution of this suit; and

      G.     That Relator be granted such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Relator demands a jury trial for all claims and issues so triable.

Dated: March 18, 2021          Respectfully submitted,

                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                      By: _____

| | |
|---|---|
| 1 | |
| 2 | Robert J. Nelson (CA 132797) |
|   | rnelson@lchb.com |
| 3 | Nimish R. Desai (CA 244953) |
|   | ndesai@lchb.com |
| 4 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 5 | 275 Battery Street, 29th Floor |
|   | San Francisco, CA  94111-3339 |
| 6 | Telephone:  415.956.1000 |
|   | Facsimile:  415.956.1008 |
| 7 | Attorneys for Relator |

